UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

MARCUS D. YOUNG,

                   Petitioner,

   v.

RENEE BAKER, *et al.*,

                   Respondents.

Case No. 3:12-cv-00474-MMD-WGC

ORDER

## I.  INTRODUCTION

This action is a petition for writ of habeas corpus by Marcus D. Young, a Nevada prisoner. The action is before the Court with respect to the merits of the claims in Young's habeas petition. The Court will deny Young's petition.

## II.  BACKGROUND

On January 21, 2009, Young was convicted in Nevada's Second Judicial District Court, upon guilty pleas, of one count of sexual assault on a child and one count of lewdness with a child under the age of fourteen years, and he was sentenced to a term of life in prison with the possibility of parole after twenty years on the sexual assault conviction, and a consecutive term of life in prison with the possibility of parole after ten years on the lewdness conviction. *See* Judgment, Exh. 13 (ECF No. 25-13) (The exhibits referred to in this order were filed by Young and are found in the record at ECF Nos. 25, 26 and 27.).

Young's conviction resulted from his sexual assault upon, and lewdness with, his eleven-year old step-daughter. (*See* Incident Report, Exh. 1 (ECF No. 25-1); Arrest Report and Declaration of Probable Cause, Exh. 2 (ECF No. 25-2); Transcript of Interview, Exh. 3 (ECF No. 25-3); Transcript of Arraignment (Guilty Plea), Exh. 10 at 6-10 (ECF No. 25-10 at 7-11).) Police reports filed in this case by Young, along with the transcript of his statements to the police, reflect that there was substantial evidence of multiple sexual assaults and incidents of lewd behavior over several months. (*See* Incident Report, Exh. 1 (ECF No. 25-1); Arrest Report and Declaration of Probable Cause, Exh. 2 (ECF No. 25-2); Transcript of Interview, Exh. 3 (ECF No. 25-3).)

Young did not pursue a direct appeal of the judgment of conviction. However, on October 14, 2009, Young filed a petition for writ of habeas corpus in the state district court. (*See* Petition for Writ of Habeas Corpus, Exh. 23 (ECF No. 26-6).) Counsel was appointed for Young, and, with counsel, Young filed a supplemental habeas petition on August 31, 2010. (*See* Supplemental Petition for a Writ of Habeas Corpus, Exh. 32 (ECF No. 26-15).) The state district court held an evidentiary hearing on January 7, 2011. (*See* Transcript of Evidentiary Hearing, Exh. 37 (ECF No. 26-20).) On January 24, 2011, the state district court denied Young's petition. (*See* Order, Exh. 39 (ECF No. 26-22).) Young appealed, and the Nevada Supreme Court affirmed on June 14, 2012. (*See* Order of Affirmance, Exh. 54 (ECF No. 27-13).)

Young initiated this federal habeas corpus action on September 5, 2012, by filing a *pro se* habeas corpus petition (ECF No. 4). Counsel was appointed to represent Young. (*See* Order entered January 28, 2013 (ECF No. 14); Notice of Appearance of Counsel (ECF No. 15).) With counsel, Young filed an amended petition for writ of habeas corpus — the operative petition in the case — on September 19, 2013 (ECF No. 24). Respondents filed an answer (ECF No. 33), and Young filed a reply (ECF No. 38).

III.    SUBSTITUTION OF RESPONDENT WARDEN

The Court observes that, Robert LeGrand, the named respondent warden of the prison where Young is incarcerated, the Lovelock Correctional Center, is no longer the

warden of that prison. Renee Baker is now the warden. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), the Court will direct the Clerk of the Court to substitute Renee Baker for Robert LeGrand as the respondent warden on the docket for this case.

## IV.    DISCUSSION

### A.    Standard of Review

28 U.S.C. § 2254(d) sets forth the standard of review applicable in this case under the Antiterrorism and Effective Death Penalty Act (AEDPA):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's

3

application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing standard as "a difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

## B. Ground 1A

In Ground 1 of his amended habeas petition, Young claims that his federal constitutional rights were violated because of ineffective assistance of his trial counsel. (*See* Amended Petition (ECF No. 24) at 6-7.) Ground 1 is subdivided into five separate claims of ineffective assistance of trial counsel; the five separate claims are designated Grounds 1A, 1B, 1C, 1D and 1E. (*See id.* at 7-9.) In Ground 1A, Young claims that his trial counsel was ineffective for not moving to suppress statements that Young made to the police. (*See id.* at 7-8; *see also* Reply (ECF No. 38) at 4-10.)

Young asserted this claim in his state habeas action. (*See* Supplemental Petition for a Writ of Habeas Corpus, Exh. 32 at 5-9 (ECF No. 26-15 at 6-10). After holding an evidentiary hearing (*see* Transcript of Evidentiary Hearing, Exh. 37 (ECF No. 26-20)), the state district court denied the claim. (*See* Order, Exh. 39 at 1-2 (ECF No. 26-22 at 4-5).) On the appeal in Young's state habeas action, the Nevada Supreme Court ruled as follows on this claim:

> [A]ppellant claims that counsel was ineffective for failing to file a motion to suppress his confession. Appellant claims that he was not given his *Miranda v. Arizona*, 384 U.S. 436 (1966), warnings until partway through

his interview with police. Appellant claims that this violated *Missouri v. Seibert*, 542 U.S. 600 (2004), because the police officers employed an improper two-step interrogation scheme to get him to confess. Appellant fails to demonstrate that counsel was deficient. First, appellant failed to demonstrate that he was in custody for his pre-warned statement such that *Miranda* would apply because he drove himself to the police station, he was told he was not under arrest at the beginning of the interview, his movement was not restricted, he voluntarily answered questions, and only one police officer at a time was present during questioning. *State v. Taylor*, 114 Nev. 1071, 1082, 968 P.2d 315, 323 (1998). Because appellant was not in custody, the police officer was not required to give the *Miranda* warnings at this point of the interview.

Second, unlike in *Seibert*, appellant did not confess prior to being given his *Miranda* warnings. In fact, appellant was adamant that he had done nothing wrong. Therefore, the concerns that existed in *Seibert* did not exist in this case. Accordingly, counsel was not deficient for failing to file a motion to suppress as that motion would have been futile, *Donovan v. State*, 94 Nev. 671, 675, 584 P.2d 708, 711 (1978), and the district court did not err in denying this claim.

(Order of Affirmance, Exh. 54 at 2-3 (ECF No. 17-13 at 3-4).)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court propounded a two prong test for claims of ineffective assistance of counsel: the petitioner must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. A court considering a claim of ineffective assistance of counsel must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. And, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. In the context of a guilty plea, to satisfy the prejudice prong of the *Strickland* test, the petitioner must show that there is "a reasonable probability that, but for counsel's errors, he would

///

not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 56-60 (1985).

Where a state court has adjudicated a claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable under the AEDPA is especially difficult. *See Harrington*, 562 U.S. at 104-05. In *Harrington*, the Supreme Court instructed:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, [*Strickland*, 466 U.S. at 689]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, [*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 994-95 (9th Cir. 2010) (acknowledging double deference required for state court adjudications of *Strickland* claims).

The Nevada Supreme Court's denial of this claim was reasonable. The well-established rule of *Miranda v. Arizona*, 384 U.S. 436 (1966), generally bars the use of statements elicited in a custodial interrogation unless the person in custody was first informed of his or her constitutional rights. *Miranda*, 384 U.S. at 444. Here, it was reasonable for the Nevada Supreme Court to conclude that during the first part of Young's statement to the police, before he was formally placed under arrest and read the *Miranda* warnings, he was not in custody. (*See, e.g.*, Transcript of Evidentiary Hearing, Exh. 37 at 27, 34-35 (ECF No. 26-20 at 28, 35-36) (Young's testimony regarding the circumstances during the first part of his statement).) In fact, at the end of the first part of Young's statement, just before he was arrested, he asked: "Look are you gonna arrest me? If not, I'd like to go." (Transcript of Interview, Exh. 3 at 37, lines 24-25 (ECF No. 25-3 at 38, lines 24-25). Taking into consideration all the circumstances, including Young's own view that ///

he had not been arrested, this Court finds that the Nevada Supreme Court reasonably determined that Young was not in custody before he was given the *Miranda* warnings.

With respect to Young's contention that he was subjected to an improper two-part interrogation in violation of the rule of *Missouri v. Seibert*, 542 U.S. 600 (2004), this case is unlike *Seibert* because Young did not confess before he was read the *Miranda* warnings. A defendant's post-warning statements may be inadmissible if law enforcement officers used an improper two-step interrogation process. *See Seibert*, 542 U.S. at 617. "A two-step interrogation involves eliciting an unwarned confession, administering the *Miranda* warnings and obtaining a waiver of *Miranda* rights, and then eliciting a repeated confession." *United States v. Narvaez-Gomez*, 489 F.3d 970, 973-74 (9th Cir. 2007) (citing *Seibert*, 542 U.S. at 609-10). "If the interrogators deliberately employ the two-step strategy, the [court] must suppress post-warning statements unless the interrogators take curative measures to apprise the defendant of his rights; if the two-step method is not deliberate, the post-warning statements are admissible if voluntarily made." *Id.* at 974 (citing *Seibert*, 542 U.S. at 622 (Kennedy, J., concurring)). In this case, Young did not confess during the unwarned portion of the interview, before he was arrested and given *Miranda* warnings. When Young was placed under arrest, he stated: "Can we talk some more? Please?" (Transcript of Interview, Exh. 3 at 38, line 7 (ECF No. 25-3 at 39, line 7).) He was then given *Miranda* warnings, and he went on to confess. (*See id.* at 38-64.) There is no showing that the police officers deliberately employed a two-step interrogation strategy, or that any of Young's statements to the police were involuntary.

Young's trial counsel testified, at some length, at the evidentiary hearing in the state district court, regarding her decision not to move for suppression of Young's confession. She testified that she read the transcript of the statement or watched a video of it. (*See* Transcript of Evidentiary Hearing, Exh. 37 at 57, 65 (ECF No. 26-20 at 58, 66).) She testified further:

> Q.     You'd indicated you did not make a motion to suppress. Can you explain why?

A.      Yes, sir.

Q.      Okay. Go ahead.

A.      In my review of the interview/interrogation, to begin with, Mr. Young was invited down to visit with the police officers. He drove down by himself. He was not in custody.

And preliminarily, he was not interrogated. In my professional opinion, he was interviewed. He was asked some biographical information. He was free to leave. He was — as I recall — again, it's been two years — he was advised that he wasn't originally under arrest and he was free to leave. However — and during that time, nothing was gleaned from that interview that would have been subject to suppression.

Now, when they — the police officers decided to place him under arrest, they fully Mirandized him. He was put into handcuffs, and he was given the *Miranda* admonishment. So, anything after that might have been suppressible, but he was given his *Miranda* warnings. Anything before that, he was not in custody, and frankly, there is nothing in his statement that is incriminating so I would have had nothing to suppress.

Q.      To put a fine point on it, up to the point that he's actually put in formal arrest, you had determined, based on the totality of the circumstances leading up to that, that he had not been subject to a quote-unquote "custodial interrogation?"

A.      That is correct.

Q.      And then after that, he's formally under arrest, so we don't have a custody issue?

A.      Correct.

Q.      And he's given a *Miranda* warning, and then he's interrogated?

A.      Yes.

Q.      And then he makes all the various and sundry admissions and confessions, right?

A.      Yes.

Q.      And your conclusion was based on the facts as you understood them and the applicant principles of law, this motion was not going to be meritorious?

A.      That's absolutely correct.

*(Id.* at 71-73 (ECF No. 26-20 at 72-74).)

The Court is mindful of the double deference necessary in resolving this claim. The

Court grants deference to counsel's determination that a motion to suppress would not

8

have been meritorious; in addition, the Court grants deference to the state supreme court's conclusion that counsel acted reasonably in making that determination. *See Harrington*, 562 U.S. at 105 (describing double deference required in reviewing state court adjudications of *Strickland* claims); *Cheney*, 614 F.3d at 994-95 (same).

The Court concludes that the Nevada Supreme Court's denial of this claim was not contrary to, or an unreasonable application of, *Miranda*, *Seifert*, *Strickland*, or any other clearly established federal law as determined by the Supreme Court, and was not based on an unreasonable determination of the facts in light of the evidence presented. The Court will deny relief with respect to Ground 1A.

**C.    Ground 1B**

In Ground 1B, Young claims that his federal constitutional rights were violated, as a result of ineffective assistance of his trial counsel, because his trial counsel did not inform him that an examination of the victim did not reveal signs of sexual abuse. (*See* Amended Petition at 8.)

Young asserted this claim in his state habeas action. (*See* Supplemental Petition for a Writ of Habeas Corpus, Exh. 32 at 9-10 (ECF No. 26-15 at 10-11).) After the evidentiary hearing (*see* Transcript of Evidentiary Hearing, Exh. 37 (ECF No. 26-20)), the state district court denied the claim. (*See* Order, Exh. 39 at 2-3 (ECF No. 26-22 at 5-6). On the appeal, the Nevada Supreme Court ruled as follows on this claim:

> [A]ppellant claims that his plea was involuntary and unknowing because counsel did not inform appellant that the CARES exam was negative. Appellant fails to demonstrate his plea was invalid. At the evidentiary hearing, counsel testified that she did go over the CARES exam prior to appellant signing the plea agreement. She explained to him that the physical findings of the exam were negative but that the nurse still believed that the victim had been assaulted based on the statements and behavior of the victim. The district court found counsel to be credible. Based on that testimony, substantial evidence supports the decision of the district court.

(Order of Affirmance, Exh. 54 at 5 (ECF No. 17-13 at 6).)

Young's trial counsel testified as follows about this matter at the evidentiary hearing in state court:

///

Q.    Okay. When exactly did you get a copy of the CARES report in this case?

A.    Well, I received the gist of the CARES report in the body of the police report —

Q.    Okay.

* * *

A.    — which was when I received the bulk of discovery prior to the preliminary hearing.

Q.    Okay. So it was in the police report, but you hadn't received the CARES report at that time; is that correct?

A.    I received the full CARES report on November 4th, 2008.

Q.    So that was prior to pleading guilty or the signing of the guilty plea; is that correct?

A.    As I said, I received the results of the CARES report in the body of the police report prior to the preliminary hearing.

Q.    What was the results of the CARES report?

A.    It was — the CARES exam was authored by a CARES nurse, Kathleen Solomon, and she indicated that "the victim" … "gave a concerning history and was very believable in her disclosures. The physical exam did not reveal evidence of any injury; however, based upon [the victim's] disclosure, it is not unusual to have no findings. A copy of the complete will be forwarded when it is received."

Q.    So there were no physical findings of sexual assault in the report; is that correct?

A.    That's correct.

Q.    Did you discuss this CARES report with Mr. Young?

A.    I discussed that there were no physical findings at that time.

However, to follow up on your first question, the CARES exam did reveal some information that would suggest possible sexual assault.

Q.    What was that, could you tell me?

A.    Sure, if you give me just a second.

"[The victim] was acting out and talking back. She had a decrease in her grades."

* * *

Q.    Okay.

A.    "Decrease in her grades. She indicated to Nurse Solomon she was afraid of Mr. Young. She was experiencing physical symptoms, to include abdominal pelvic pain, migraine headaches, vulvar discomfort, vulvar pain, vaginal itching, sleep disturbances, fear, anger, depression, suicidal ideations, and she was running away."

* * *

Q.    … Now, all those things could be caused by other things besides sexual assault; is that not true?

A.    I don't know.

Q.    You don't know?

A.    I don't know. I suppose.

Q.    You don't think a migraine headache could be caused by something other than sexual assault?

A.    I suppose so.

Q.    Maybe vaginal itching may be something other than a sexual assault?

A.    Counsel, I'm simply saying that these are possible indicators of sexual assault —

Q.    But I mean —

A.    — in my experience.

Q.    But there was no physical findings of sexual assault on the exam per the finding of the nurse; is that correct?

A.    No, but if you'll look at the last page of her report, Nurse Solomon indicated that this was a normal exam, but the lack of physical exam findings — and this is highlighted — does not exclude the possibility of sexual abuse.

* * *

Q.    Okay. So he saw the offer of two felonies, one with the fictional sentence; you explained that to him and he agreed to it?

A.    Yes.

Q.    Did he — did you convey to him at this early point in time the result of the CARES report?

A.    I conveyed to him the gist of the CARES report, which was, as I told you, quote, "[the victim] gave a concerning history that was very believable in her disclosures. The physical exam did not reveal evidence of any injury; however, based upon [the victim's] disclosure, it is not unusual to have no findings."

So, essentially, I disclosed to Marcus, but by way of the body of the police report, that there were no physical findings of sexual assault but that it was not necessarily unusual to have no physical findings in this type of case.

Q.     Well, is he having a conversation with you along these lines: "They've got no physical evidence on me. Why don't we just go to trial?"

A.     Absolutely not.

Q.     Never said anything to that effect?

A.     No, sir.

(Transcript of Evidentiary Hearing, Exh. 37 at 58-61, 70-71 (ECF No. 26-20 at 59-62, 71-72).) Based on this testimony, it was reasonable for the Nevada courts to find that Young's counsel did tell him about the results of the CARES examination before he pled guilty, and to rule that, in this regard, trial counsel did not perform unreasonably.

Moreover, with respect to the question of prejudice, Young testified at the evidentiary hearing that the reason he pled guilty was his confession to the police. (*See* Transcript of Evidentiary Hearing, Exh. 37 at 41 (ECF No. 26-20 at 42) ("That's what the whole — that's what my whole plea was based on, was my statement."); *see also id.* at 69-70 (testimony of Young's counsel about Young's decision to plead guilty); *id.* at 63-65 (testimony of Young's counsel about her meeting with him to discuss his expression of interest in withdrawing his plea).) There is no showing of prejudice; that is, there is no showing of a reasonable probability that if Young had more information, earlier, about the results of the CARES examination, he would not have pled guilty.

The Nevada Supreme Court reasonably denied relief on this claim. The Court will deny relief with respect to Ground 1B.

**D.     Ground 1C**

In Ground 1C, Young claims that his federal constitutional rights were violated, as a result of ineffective assistance of his trial counsel, because his trial counsel did not explain to him the specific terms of lifetime supervision. (*See* Amended Petition at 8-9.)

Young asserted this claim in his state habeas action. (*See* Supplemental Petition for a Writ of Habeas Corpus, Exh. 32 at 10-12 (ECF No. 26-15 at 11-13).) After the

evidentiary hearing (*see* Transcript of Evidentiary Hearing, Exh. 37 (ECF No. 26-20)), the state district court denied the claim. (*See* Order, Exh. 39 at 3-4 (ECF No. 26-22 at 6-7). On the appeal in Young's state habeas action, the Nevada Supreme Court ruled as follows on this claim:

> [A]ppellant claims that his plea was involuntary and unknowing because he was not informed of the specific terms of his lifetime supervision. Appellant fails to demonstrate that his plea was invalid because the particular conditions of lifetime supervision are tailored to each individual case and are not determined until after a hearing is conducted just prior to the expiration of the sex offender's completion of a term of parole or probation, or release from custody. *See* NRS 213.1243(1); NAC 213.290. All that is required is that a defendant was aware that he would be subject to lifetime supervision and not the precise conditions of lifetime supervision. *Palmer v. State*, 118 Nev. 823, 831, 59 P.3d 1192, 1197 (2002). Here, appellant was informed in the written guilty plea agreement and during the guilty plea canvass that he was subject to the special sentence of lifetime supervision. Therefore, the district court did not err in denying this claim.

(Order of Affirmance, Exh. 54 at 5 (ECF No. 17-13 at 6).)

The Nevada Supreme Court accurately pointed out that Young was informed, both in the written plea agreement that he signed and in open court when he pled guilty, that he would be subject to lifetime supervision. (*See* Guilty Plea Memorandum, Exh. 9 at 3 (ECF No. 25-9, p. 4) ("I further understand that I will be required to be on lifetime supervision pursuant to NRS 176.0931."); Transcript of Arraignment (Guilty Plea), Exh. 10 at 8 (ECF No. 25-10 at 9).) When Young entered his guilty plea, the court inquired whether he understood the consequences of his plea, and he said yes; he was asked whether he had any questions, and he said no. (*See* Transcript of Arraignment (Guilty Plea), Exh. 10 at 5-10 (ECF No. 25-10 at 6-11).) There is no showing that Young's counsel performed unreasonably in not informing Young about the specific terms of lifetime supervision before he pled guilty.

Furthermore, there is no showing of any reasonable probability that, had Young known more about lifetime supervision, he would not have pled guilty. Young's guilty plea gave him a possibility of being released from prison during his lifetime; had Young not pled guilty, in light of his confession, he faced a very real possibility of a prison sentence of 90 years before he would be eligible for parole. (*See* Transcript of Evidentiary Hearing,

Exh. 37 at 69-71.) Based on the evidence, it appears inconceivable that the question of the specific terms of the lifetime supervision was a deciding factor driving Young's decision to plead guilty.

The Nevada Supreme Court's denial of this claim was not contrary to or an unreasonable application of clearly established federal law, and it was not based on an unreasonable determination of the facts in light of the evidence. The Court will deny relief with respect to Ground 1C.

### E.    Ground 1D

In Ground 1D, Young claims that his federal constitutional rights were violated, as a result of ineffective assistance of his trial counsel, because his counsel failed to seek a continuance of Young's sentencing so that Young could be sentenced by the same judge who presided over his arraignment and guilty plea, and because trial counsel did not move to recuse the sentencing judge or otherwise object on the ground that the judge was biased against Young. (*See* Amended Petition at 9.)

Young asserted this claim in his state habeas action. (*See* Supplemental Petition for a Writ of Habeas Corpus, Exh. 32 at 12-13 (ECF No. 26-15 at 13-14).) After the evidentiary hearing (*see* Transcript of Evidentiary Hearing, Exh. 37 (ECF No. 26-20)), the state district court denied this claim. (*See* Order, Exh. 39 at 4 (ECF No. 26-22 at 7).) On the appeal in Young's state habeas action, the Nevada Supreme Court ruled as follows on this claim:

> Next, appellant claims that counsel was ineffective for failing to object to bias by the sentencing judge. Specifically, appellant claims that the judge was biased because he thanked the victim for coming and mentioned that he was a parent and that she should use her judgment in seeking counseling. Appellant fails to demonstrate that counsel was deficient or that he was prejudiced. These statements do not indicate that the district court was biased, especially since the district court was similarly polite to the people who wrote letters on behalf of appellant. Further, appellant fails to demonstrate a reasonable probability of a different outcome had counsel objected. Therefore, the district court did not err in denying this claim.

(Order of Affirmance, Exh. 54 at 3 (ECF No. 17-13 at 4).)

///

With regard to Young's contention that his trial counsel should have requested a continuance so that the sentencing could be held before the same judge who took his guilty plea (*see* Amended Petition at 9, lines 16-17), the Court finds that claim to be wholly meritless; Young's counsel did in fact move for a continuance, and the motion was denied. (*See* Transcript of Sentencing, Exh. 14 at 3-5 (ECF No. 25-24 at 4-6).)

Further, the Court finds meritless Young's claim that his counsel should have sought recusal of the judge who presided over his sentencing, or should have otherwise objected on the basis that the judge was biased. The Court has examined the transcript of the sentencing, and finds that there is no indication whatsoever of bias on the part of the sentencing judge. (*See* Transcript of Sentencing, Exh. 14 (ECF No. 25-24).) The judge's interactions with the victim and her mother were not improper, and did not show bias. (*See id.* at 11, 14-15, 19-20 (ECF No. 25-24 at 12, 15-16, 20-21); *see also* Transcript of Evidentiary Hearing, Exh. 37 at 66 (ECF No. 26-20 at 67) (Young's counsel did not find the sentencing judge to be biased).) The record reflects that the judge treated the young victim and her mother with compassion and respect.

The Nevada Supreme Court's denial of this claim was legally and factually reasonable. The Court will deny relief on Ground 1D.

**F.    Ground 1E**

In Ground 1E, Young claims that his federal constitutional rights were violated, as a result of ineffective assistance of his trial counsel, because his counsel did not file a notice of appeal. (*See* Amended Petition at 9.)

Young asserted this claim in his state habeas action. (*See* Supplemental Petition for a Writ of Habeas Corpus, Exh. 32 at 13-14 (ECF No. 26-15 at 14-15).) After holding the evidentiary hearing (*see* Transcript of Evidentiary Hearing, Exh. 37 (ECF No. 26-20)), the state district court denied this claim. (*See* Order, Exh. 39 at 4 (ECF No. 26-22 at 7).)

///

///

///

On the appeal in Young's state habeas action, the Nevada Supreme Court ruled as follows on this claim:

> Next, appellant claims that counsel was ineffective for failing to file an appeal when requested to do so. Appellant claims that he requested counsel to file an appeal after sentencing but she told him that he could not appeal because he pleaded guilty. He also claims that he sent her a letter during the appeal period requesting her to file an appeal. Appellant fails to demonstrate that counsel was deficient. Counsel testified at the evidentiary hearing that appellant did not ask her to file an appeal at the end of sentencing and denied that she told him that he could not appeal. Further, she admitted that she received a letter from appellant dated during the appeal filing period, but that it was postmarked nearly seven months after the date it was written. [Footnote 1: Appellant did not produce any evidence at the evidentiary hearing that there was any official interference at the prison that prevented the letter from being timely mailed.] The district court found counsel credible. Based on that testimony, substantial evidence supports the decision of the district court that appellant was not deprived of his right to appeal due to ineffective assistance of counsel.

(Order of Affirmance, Exh. 54 at 4 (ECF No. 17-13 a 5).) This Court finds that the Nevada Supreme Court's denial of this claim was reasonable in light of the governing law and the evidence presented.

In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Supreme Court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe v. Flores-Ortega*, 528 U.S. at 480. The Supreme Court instructed that all the circumstances are relevant to this inquiry, and that "a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.*

In this case, Young pled guilty, in the face of strong evidence — primarily his confession — that could have led to his conviction and a sentence that would mean spending his entire life in prison; the plea agreement gave Young the possibility of getting out of prison on parole during his lifetime. Young has never described any potentially valid

1   claims that he would have raised on a direct appeal had his attorney filed a notice of

2   appeal. The Court sees no reason to believe that a rational defendant would necessarily

3   wish to appeal under these circumstances.

4          Young's trial counsel testified as follows at the state-court evidentiary hearing with

5   regard to Young's untimely request that she pursue an appeal on his behalf:

6          Q.     Did Mr. Young request a direct appeal?

7          A.     Mr. Young requested a direct appeal on January 26th of 2009.

8          Now, you received this information via a letter from Mr. Young, and I
       do have the original here, and I also have the letter that it came in — or, the
9      envelope that it came in.

10         Q.     What was the date on that letter, again? I'm sorry.

11         A.     January 26th of 2009, which clearly is within the 30-day
       limitation; however, when I received the file back from archives, the
12     envelope that I'm assuming it came in because it was attached to it, shows
       that it left Lovelock Correctional Facility on August 11th, 2009.
13

14         Q.     So they held on to it for six months?

15         A.     I don't know.

           Q.     So he didn't request it outside the hearing as he was being
16     taken away?

17         A.     No.

18                                  * * *

19         Q.     Okay. Now, you come into the sentencing hearing and the
       case is going to be heard by Judge Kosach. After Judge Kosach imposes
20     the sentence, do you have a conversation with Mr. Young about an appeal?

21         A.     No.

22         Q.     Does he say anything about post-conviction remedies,
       appellate remedies, I'm unhappy with my sentence, you know, this is
23     ridiculous, or words to that effect?

24         A.     No, Your Honor — I'm sorry. No.

25         Q.     And thereafter, not until you receive this letter do you have
       any indication at all that Mr. Young wants an appeal?
26

27         A.     No.

28   ///

                                 17

> Q.      And then postmarked — the postmark on the letter — excuse me, the postmark on the envelope containing the letter you described is many, many months after it's apparently been offered; is that correct?
>
> A.      Yes.
>
> Q.      Okay. And up until then, no other letter, on other phone call, nothing from Mr. Young about an appeal, correct?
>
> A.      No other letter, and as far as my recollection, no phone call.

(Transcript of Evidentiary Hearing, Exh. 37 at 66-67, 76-77 (ECF No. 26-20 at 67-68, 77-78).) The evidence, then, was that Young did not timely request his attorney to file a notice of appeal.

The Nevada Supreme Court's denial of this claim was not contrary to, or an unreasonable application of any clearly established federal law, as determined by the Supreme Court, and was not based on an unreasonable determination of the facts in light of the evidence presented. The Court will deny relief with respect to Ground 1E.

## G.      Ground 2

In Ground 2, Young claims that his federal constitutional rights were violated because his guilty plea was not entered knowingly, intelligently and voluntarily, because he was not informed before his plea that an examination of the victim did not reveal any evidence of sexual abuse, and because he was not informed before his plea of the specific terms of lifetime supervision. (*See* Amended Petition at 10-11.)

Young asserted this claim in his state habeas action (*see* Supplemental Petition for a Writ of Habeas Corpus, Exh. 32 at 9-12 (ECF No. 26-15 at 10-13)), and, after holding an evidentiary hearing (*see* Transcript of Evidentiary Hearing, Exh. 37 (ECF No. 26-20)), the state district court denied the claim. *See* Order, Exh. 39 at 2-4 (ECF No. 26-22 at 5-7). On the appeal in Young's state habeas action, the Nevada Supreme Court ruled as follows on this claim:

> Next, appellant claims that the district court erred in denying his claim that his plea was involuntary and unknowing. A guilty plea is presumptively valid, and a petitioner carries the burden of establishing that the plea was not entered knowingly and intelligently. *Bryant v. State*, 102 Nev. 268, 272, 721 P.2d 364, 368 (1986); *see also Hubbard v. State*, 110 Nev. 671, 675,

18

877 P.2d 519, 521 (1994). In determining the validity of a guilty plea, this court looks to the totality of the circumstances. *State v. Freese*, 116 Nev. 1097, 1105, 13 P.3d 442, 448 (2000); *Bryant*, 102 Nev. at 271, 721 P.2d at 367.

First, appellant claims that his plea was involuntary and unknowing because counsel did not inform appellant that the CARES exam was negative. Appellant fails to demonstrate his plea was invalid. At the evidentiary hearing, counsel testified that she did go over the CARES exam prior to appellant signing the plea agreement. She explained to him that the physical findings of the exam were negative but that the nurse still believed that the victim had been assaulted based on the statements and behavior of the victim. The district court found counsel to be credible. Based on that testimony, substantial evidence supports the decision of the district court.

Second, appellant claims that his plea was involuntary and unknowing because he was not informed of the specific terms of his lifetime supervision. Appellant fails to demonstrate that his plea was invalid because the particular conditions of lifetime supervision are tailored to each individual case and are not determined until after a hearing is conducted just prior to the expiration of the sex offender's completion of a term of parole or probation, or release from custody. *See* NRS 213.1243(1); NAC 213.290. All that is required is that a defendant was aware that he would be subject to lifetime supervision and not the precise conditions of lifetime supervision. *Palmer v. State*, 118 Nev. 823, 831, 59 P.3d 1192, 1197 (2002). Here, appellant was informed in the written guilty plea agreement and during the guilty plea canvass that he was subject to the special sentence of lifetime supervision. Therefore, the district court did not err in denying this claim.

(Order of Affirmance, Exh. 54 at 4 (ECF No. 17-13 at 5).)

The federal constitutional guarantee of due process of law requires that a guilty plea be knowing, intelligent and voluntary. *Brady v. United States*, 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *United States v. Delgado-Ramos*, 635 F.3d 1237, 1239 (9th Cir. 2011). "The voluntariness of [a petitioner's] guilty plea can be determined only by considering all of the relevant circumstances surrounding it." *Brady*, 397 U.S. at 749. Those circumstances include "the subjective state of mind of the defendant...." *Iaea v. Sunn*, 800 F.2d 861, 866 (9th Cir. 1986). Addressing the "standard as to the voluntariness of guilty pleas," the Supreme Court has stated:

(A) plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady*, 397 U.S. at 755 (quoting *Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc), rev'd on other grounds, 356 U.S. 26 (1958)); *see also North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (noting that the "longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'").

In *Blackledge v. Allison*, 431 U.S. 63 (1977), the Supreme Court addressed the evidentiary weight of the record of a plea proceeding when the plea is subsequently subject to a collateral challenge. While noting that the defendant's representations at the time of his guilty plea are not "invariably insurmountable" when challenging the voluntariness of his plea, the court stated that, nonetheless, the defendant's representations, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings" and that "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74; *see also Muth v. Fondren*, 676 F.3d 815, 821 (9th Cir. 2012); *Little v. Crawford*, 449 F.3d 1075, 1081 (9th Cir. 2006).

As is discussed above with respect to Ground 1B, the Nevada Supreme Court ruled, based on the testimony of Young's trial counsel at the state-court evidentiary hearing, that Young's counsel did in fact advise him of the results of the CARES examination before he pled guilty. That ruling was not unreasonable in light of the evidence presented, and it undermines Young's claim that his plea was not knowing, intelligent and voluntary because he did not know the results of the CARES examination of the victim before he pled guilty.

With respect to Young's knowledge of the terms of lifetime supervision, as is discussed above with respect to Ground 1C, the record reflects that Young was repeatedly informed that he would be subject to lifetime supervision, and Young did not inquire of either his counsel or the court regarding the specific terms of lifetime supervision. The Nevada Supreme Court ruled that information concerning the specific terms of lifetime supervision was not necessary to render Young's guilty plea knowing,

intelligent and voluntary. Young has not cited to any United States Supreme Court precedent to the contrary, and the Court knows of none. The Nevada Supreme Court's ruling in this regard was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.

In view of the entire record in this case, and considering all the circumstances, it was reasonable for the Nevada Supreme Court to rule Young's guilty plea to be knowing, intelligent and voluntary. There was strong evidence — primarily Young's confession — upon which Young could well have been convicted of multiple counts of sexual assault and multiple counts of lewdness, resulting in a sentence far more onerous than the sentence that resulted from his guilty plea. That evidence, and the possibility of spending his entire life in prison, was plainly Young's motivation for pleading guilty. The transcript of the hearing at which Young pled guilty reflects that he understood and agreed with the terms of the plea agreement, that he understood the range of possible sentences, including that he would be subject to lifetime supervision, that he was satisfied with the representation he received, that he pled guilty because he was guilty, and that he had no questions for the court. (*See* Transcript of Arraignment (Guilty Plea), Exh. 10 at 5-10 (ECF No. 25-10 at 6-11). Young's guilty plea was knowing, intelligent and voluntary.

The Court will deny habeas corpus relief on Ground 2.

## V.    CERTIFICATE OF APPEALABILITY

The standard for issuance of a certificate of appealability is governed by 28 U.S.C. § 2253(c). The Supreme Court has interpreted section 2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79 (9th Cir. 2000). Applying this standard, the Court finds that a certificate of appealability is not warranted with regard to any of Young's claims.

///

1    **VI.    CONCLUSION**

2         It is therefore ordered that, pursuant to Federal Rule of Civil Procedure 25(d), the

3    Clerk of the Court is directed to substitute Renee Baker for Robert LeGrand, on the docket

4    for this case, as the respondent warden of the Lovelock Correctional Center.

5         It is further ordered that the Amended Petition for Writ of Habeas Corpus (ECF No.

6    24) is denied.

7         It is further ordered that the petitioner is denied a certificate of appealability.

8         It is further ordered that the Clerk of the Court is to enter judgment accordingly.

9
     DATED THIS 3rd day of May 2017.
10

11
                                              _____
12                                            MIRANDA M. DU
                                              UNITED STATES DISTRICT JUDGE
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28